## Case No. 5,734.

The GRAY EAGLE.

[1 Biss. 476.] [1]

District Court, D. Wisconsin. April, 1865.[2]

VESSEL HAVING LOST HER LIGHTS—WHEN EXCUSABLE FOR RUNNING—HELD TO STRICTEST RULES—LOOKOUT—DUTY OF OFFICERS—APPROACHING SAIL VESSEL — VESSEL DISREGARDING POSITIVE RULES.

1. A sail vessel having lost her green and red lights in the night time, in a storm on Lake Michigan, may be excusable for pursuing her voyage,

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Reversed in Case No. 5,735.]

from necessity, during that night with the prohibited white light; but is in primary fault for running the next night down the Straits of Mackinac where there was good anchorage, without the signal red and green lights.

[See note at end of case.]

2. A sail vessel running with the prohibited white light alone, in the night time, is under superior obligations to observe the strictest duty to avoid collisions.

3. A sail vessel in an unseaworthy condition is in fault, when not having sufficient and competent lookouts, and an officer of nautical skill on deck.

4. The master of a vessel running in the night without the proper signal lights, having seen a sail vessel four miles ahead, went below leaving a second mate in command, who was not skilled in seamanship, and no proper lookouts on deck, and when a collision became imminent, the second mate left his post and called up the master; *held*, these officers are in fault, and their evidence in regard to the collision is not reliable.

. 5. A sail vessel in every respect seaworthy, meeting in the night time another sail vessel running on a calm water without the red and green signal lights, and with a white light alone, is justified in considering the white light to be the light of a vessel at anchor; and, in the absence of willfulness or gross negligence, is not in fault of a collision.　．

6. A sail vessel running in the night time in disregard of the positive rules as to signal lights, is guilty of a violation of law, and if she caused thereby uncertainty and embarrassment with the men on the colliding vessel as to her motion and course, the colliding vessel should not be adjudged in fault for a mistake in endeavoring to avoid an impending peril.

In admiralty. This was a libel brought by John Greening and Charles N. Deott, owners of the schooner Perseverance, which sailed from the port of Chicago for Ogdensburg, with a cargo of wheat on board, in the month of November, 1864. In a storm on Lake Michigan, she shipped a heavy sea, which washed away her screen, and broke both her colored signal lamps, leaving her with nothing but a white light. The master, being unable to procure signal lights at the Manitou Islands, and the weather being cold, proceeded on his voyage, and about two o'clock, a. m., of the 24th November, the schooner sailing down the Straits of Mackinac, wind south, her course lying east of south, collided with the schooner Gray Eagle and was sunk. The facts are further stated in the opinion.

Wm. P. Lynde, for libellants.
Emmons & Van Dyke, for respondent.

MILLER, District Judge. The second mate of the Perseverance, who had the watch that night, and was the commanding officer on deck, being on the lookout discerned lights ahead, and soon discovered that they were borne by a schooner, approaching the Perseverance in a west, south-west direction about half a mile distant, and bearing about one point on her starboard bow. In the 4th article of the libel it is propounded, that at the time when the light was first discovered the Perseverance carried a bright light suspended on her pawl post, which remained

there until she went down. It is further alleged in the libel "that as soon as the second mate discovered the approach of the vessel, he called the captain of the Perseverance, who came immediately on deck. The approaching vessel hauled up so much that she shut out her red light, and the Perseverance kept on her course, the master and mate believing that the approaching vessel would keep clear of her on the starboard side, until the vessels were nearly abreast, when the approaching vessel kept away again until she showed her red light, when the master of the Perseverance called to the approaching vessel to luff, and several times repeated this request in a loud and audible voice, and at the same time ordered his own man at the wheel to put the wheel down hard a-starboard. The approaching vessel made no reply, but kept on her course, and in less than two minutes the approaching vessel struck the Perseverance astern on about the starboard quarter with such force as to sink her in about two minutes, and was with her cargo totally lost."

The answer states that the schooner Gray Eagle was sailing up the Straits of Mackinac, on a voyage from Buffalo to Milwaukee, that when about two miles to the southward and westward of Sheboygan light, which is about ten miles below the port of Mackinac, the Gray Eagle being in the usual course of vessels coming up the straits, and heading west-north-west, the wind being south-south-west. The first mate then had the watch, and was the commanding officer on deck. The schooner had two men on the lookout forward, and the commanding officer in his position, and a competent man at the wheel, and carrying a red light on her port bow and a green light on her starboard bow, as required by the regulations. A white light was seen about a mile distant bearing about a point on the Gray Eagle's port bow, which was supposed to be a light on shore, or upon a vessel at anchor. The Gray Eagle was then kept away about a point and steadied on her course to give berth to the light. The light was not discovered to be a vessel's light in motion, by the commanding officer, until the Perseverance got within about three lengths of the Gray Eagle. Said light was then nearly ahead, and to windward.

The answer further states that the mate not seeing any other light ordered the helm hard a-port, so as to pass on the port side and keep off, and clear the stern of the Perseverance; and that he then heard for the first time a cry from the other vessel to put the helm hard down, but it was too late, the vessels came right together. That the Perseverance instead of passing the Gray Eagle on the port side as she should have done, without the knowledge of the commanding officer or the men of the Gray Eagle, and without lights to indicate her course, and contrary to prescribed or known rules of

navigation, came right across the bows of the Gray Eagle, and was struck by the Gray Eagle on her starboard quarter, in the forward part of her cabin.

From the evidence, the Perseverance was under way in the night time, in the narrowest part of the Straits of Mackinac, and where there was good anchorage, without the signal green and red lights prescribed by the act of congress, entitled "An act fixing certain rules and regulations for preventing collisions on the water," approved April 29, 1864 (13 Stat. 51), and with the white light prohibited by said act.

Article 2 of rules concerning lights, is, "The lights mentioned in the following articles and no others shall be carried in all waters between sunset and sunrise "

Article 3 directs that steam vessels, when under way, shall carry at the foremast head a bright white light, with a green light on the starboard side, and a red light on the port side. The green lights and red lights shall be fitted with inboard screens projecting at least three feet forward from the light, so as to prevent these lights from being seen across the bow.

By article 5, sailing ships under way, or being towed, shall carry the same lights as steam ships under way, with the exception of the white light, which they shall never carry.

By article 7, ships, whether steam ships or sailing ships, when at anchor in roadsteads or fair ways, shall between sunset and sunrise exhibit where it can best be seen, but at a height not exceeding twenty feet above the hull, a white light, in a globular lantern of eight inches in diameter, and so constructed as to show a clear, uniform and unbroken light, visible all around the horizon, and at a distance of at least one mile.

These rules are so positive, that courts of admiralty will not be justified in construing them otherwise than literally; and navigators must be required to strictly observe them.

The Perseverance having lost her green and red lights in a storm in the open lake in the night time, might be excused, upon the plea of necessity, in pursuing her voyage to the Manitou Islands, with a white light between sunset and sunrise; but there is no possible excuse for violating the positive rule the succeeding night in the Straits of Mackinac, where there was good anchorage.

Pressing necessity alone can excuse a vessel for violating this rule of navigation. The Perseverance was clearly the primary fault of the collision, by her running in the night time under a prohibited white light, and in the absence of the signal red and green lights.

The master of the Perseverance left the second mate on duty, and went below, where he remained warming himself and drying his clothes, he having on board an abundance of clothing. The lights of the Gray Eagle were observed ahead four or five miles off, which should have required the master to be on deck. And when within half a mile, the second mate, fearing danger, left his post and went below to call the master, who came on deck a very short time before the collision.

The theory of lookouts is so well established as not to require reference to authorities. The Perseverance had not sufficient and competent lookouts posted in proper positions on deck; neither did she observe the rule in respect to the officer's watch. A vessel on the lakes is more directly under the command of the master and first mate. The second mate, as in this case, is not usually employed or depended upon for his nautical skill.

The Perseverance was under way, descending the Straits of Mackinac at six miles an hour, without the required green and red lights, and carrying the prohibited white light. The master, under these circumstances, should have been on deck. Being wet and cold was no excuse for absence from his post. The master should have been strictly vigilant, but it seems he was extremely negligent. For these reasons the Perseverance was in fault. Henry v. Baltimore Steam Packet Co., 23 How. [64 U. S.] 287; Union Steam Co. v. New York & V. S. S. Co., 24 How. [65 U. S.] 307.

It is contended that the Perseverance, not carrying the red and green lights prescribed by the rules, and sailing with the prohibited white light, must not be adjudged solely in fault, but that the colliding vessel, the Gray Eagle, is also in fault, as in the case of Chamberlain v. Ward, 21 How. [62 U. S.] 548, decided under the act of March 3, 1849 (9 Stat. 382).

That act did not prohibit the white light. I think the intention of the prohibition was to render the vessel guilty of its violation solely responsible for a collision, in the absence of willfulness or gross negligence on the part of the colliding vessel. Do the pleadings and proof show the Gray Eagle to be in fault? This vessel was seaworthy in every respect, experienced officers, a full crew, and competent lookouts in proper positions. They saw the white light a mile off, which was supposed to be a light on shore, or upon a vessel at anchor. They knew that there was good anchorage at that point; and it was natural and consistent with duty for them at first, to consider the vessel bearing the white light to be at anchor, according to the rules of navigation. This would be the first impression on the minds of navigators who understood their duty; and such is the legal presumption. The Gray Eagle was then kept away about a point, and steadied on her course to give berth to the light, which was her duty. The light was not discovered to be a vessel's light in motion, until the Perseverance got within three lengths of the Gray Eagle. It is urged that this is a confession of negligence; that the motion of the Perseverance should have been sooner seen.

GRAY EAGLE (Case No. 5,734)  [10 Fed. Cas. page 1048]

The night was hazy and clear by times, and the water was smooth. A vessel with one white light at such a time, and on a smooth water, will not appear to the beholder at a distance to be in motion, or its course be observable in the absence of some other object. Its course can only be ascertained in the night, at a distance, from surrounding objects. The sails of the Perseverance were visible for nearly a quarter of a mile, but her course and motion might not be. The Perseverance saw the Gray Eagle half a mile off, and was running at the rate of six miles an hour, which would have brought her to the Gray Eagle stationary in five minutes. The Gray Eagle, running at about the same rate, the vessels would be brought together in two minutes and a half. It would be contrary to judicial experience to presume that the men on board the Gray Eagle were neglectful of duty under the circumstances, in the absence of satisfactory evidence. Five men at their posts on the deck of the Gray Eagle, observed the white light one mile off, bearing a point on the Gray Eagle's port bow, which they supposed to be the light of a vessel at anchor, or a light on shore. They knew they were in the narrowest part of the straits, and where there was good anchorage. They kept the Gray Eagle away about a point, and steadied her on her course to give berth to the white light. They were watching the light and at last when within three lengths, they discovered it to be a vessel's light in motion. It is not at all probable that the officers and men of the Gray Eagle, in the night time, would be indifferent as to the light ahead.

Each vessel charges the other with changing its course immediately before the collision. The Gray Eagle is charged with having headed up so as to shut off her red light. From the want of competent officers and lookouts on board the Perseverance, and the absence of the second mate when below to call the master, the charge that the Gray Eagle changed her course, is not reliable. The mate of the Gray Eagle, not seeing any other light, ordered the helm hard a-port, so as to pass on the port side and keep off, which order was obeyed. The Gray Eagle could not have run across the bow of the Perseverance, but in my opinion, from the weight of reliable evidence, the Perseverance ran across the bow of the Gray Eagle, and was struck on her starboard quarter. By changing the course of the Perseverance, the red light of the Gray Eagle was shut off, if such was the fact.

It is alleged that there was confusion on board the Gray Eagle, the lookout and the mate giving different and contrary orders to the wheelsman, but the man at the wheel testifies that he obeyed the orders of the mate, but that it made no difference what order he obeyed, or how the wheel was turned, for the collision could not then be avoided or prevented. The men on board the Gray Eagle testify that they did not change her course, and that they were at their posts and on duty. "What a witness asserts he did at the time, or did not do on his own vessel, is generally more satisfactory evidence of the fact, than the opinions and belief of a dozen others formed from what they supposed they saw or heard on another vessel." The Neptune [Case No. 10,120].

The Perseverance running without the red and green lights and with the prohibited white light, was guilty of embarrassing the men on board the Gray Eagle in their observations as to the motion and course of the Perseverance, as testified by them.

It was the special duty of the Perseverance to avoid collision in her unseaworthy condition. She could ascertain the course of the Gray Eagle by her signal lights, and is supposed to know that collision with the Gray Eagle might occur, and she should have kept away. Estimating three lengths of the Perseverance to be four hundred feet, the distance she was off when first discovered by the Gray Eagle to be in motion, the vessels each running at the rate of six miles an hour, would strike in about twenty seconds. The unavoidable collision would naturally cause some excitement on board the Gray Eagle.

In my opinion it makes no difference if there was a mistake at that crisis, in regard to the wheel of the Gray Eagle. The Perseverance caused the difficulty, and her owners must bear the consequences. Even if the Gray Eagle changed her course, under the embarrassments caused by the Perseverance, when the peril was impending and the collision inevitable, she did not commit a fault. An error committed by those in charge of the Gray Eagle under the circumstances, to avoid an imminent collision, will not prejudice her rights in a court of admiralty. I do not think that the Gray Eagle should be adjudged in fault, and thereupon decree that the libel be dismissed.

NOTE. For opinion of Davis, J., on appeal to circuit court, see [Case No. 5,735], and on appeal to the supreme court the decision was again affirmed. 9 Wall. [76 U. S.] 505. The New York court of appeals also rule that the fact that one vessel does not carry the prescribed lights does not excuse other craft from proper care and diligence in approaching or passing her; and even though such vessel were entirely without signals, or had negligently and recklessly undertaken to navigate a harbor where she should have come to anchor, if another omit to do what prudent and discreet navigators would have done, and which, if done, would have prevented the collision, the latter is chargeable. Hoffmann v. Union Ferry Co., 47 N. Y. 176. Though a vessel is deceived by the want of proper lights upon another vessel, still if she, with reasonable care, could have avoided the collision, she is still liable. Silliman v. Lewis, 49 N. Y. 379, and cases there cited.